IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

**LEATHER VANESSA PERRYMAN**                              **PLAINTIFF**

**VERSUS**                              **CIVIL ACTION NO.** 1:18-cv-172-HSO-JCG

**CIGNA CORP; LIFE INSURANCE
COMPANY OF NORTH AMERICA;
and JOHN DOES 1-10**                              **DEFENDANTS**

**JURY TRIAL DEMANDED**

## COMPLAINT

COMES NOW the Plaintiff, Leather Vanessa Perryman ("Vanessa" or "Plaintiff"), by and through counsel, and files this her Complaint against Cigna Corp, Life Insurance Company of North America, and John Does 1-10, and in support of her action would state as follows:

### PARTIES

1.  Plaintiff Leather Vanessa Perryman ("Vanessa") is an adult resident citizen of Stone County, Mississippi.

2.  Defendant Cigna Corp ("Cigna") is a foreign corporation organized under the laws of the State of Delaware with its principal place of business in Connecticut. Cigna may be served with process by serving its registered agent for service of process, CT Corporation System, 67 Burnside Avenue, East Hartford, Connecticut, 06108-3408 and by mailing a copy of the Summons and Complaint to the Defendant's address.

3.  Defendant Life Insurance Company of North America ("LINA") is a foreign insurance company organized under the laws of the State of Pennsylvania and may be served with process by serving its registered agent for service of process, CT Corporation System of

Mississippi, 645 Lakeland East Drive, Suite 101, Flowood, MS 39232 or by serving the Mississippi Commissioner of Insurance, Mike Chaney, 1001 Woolfolk State Office Building, 501 North West Street, Jackson, Mississippi.

4.     Defendants designated as John Does 1 through 10 are, based upon information and belief, certain unknown and unnamed persons and/or entities who may be liable for the claims asserted herein, who include, but are not limited to, agents, servants, employees, representatives, affiliates, parents, subsidiaries, joint-tortfeasors, contractors, co-conspirators, joint adventurers, partners, stockholders, or any other related person or entity of the named Defendants and/or any and all other persons who may be liable to the Plaintiff for the claims asserted herein. Plaintiff will amend her Complaint once the identities of the unknown Defendants are learned.

## JURISDICTION AND VENUE

5.     Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1332 because this is an action involving a Mississippi resident and two foreign corporations and Plaintiff has accumulated and demands damages in excess of $75,000.00.

6.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391. Additionally, Plaintiff became disabled while working in Stone County, Mississippi.

## FACTS

7.     From April 2012 until November 2015, Vanessa was employed by Mississippi Gulf Coast Community College ("MGCCC") as a janitorial custodian. Prior to her custodian position at MGCCC, Vanessa was employed as a painter at Ingalls shipyard for approximately three (3) years and as a production worker at General Dynamics for approximately seven (7) years.

8.     On April 9, 2012, Vanessa purchased disability insurance from Defendants, LINA and Cigna, and entered into a contractual agreement with these Defendants. A copy of the Policy

is attached hereto as **Exhibit 1.** Upon information and belief, a contractual agreement between Cigna and LINA exists whereby Cigna administers the policy on behalf of LINA.

9. The policy was established and maintained as an employee benefit through Vanessa's employer, Mississippi Gulf Coast Community College. MGCCC is a "political subdivision" and/or an "agency or instrumentality" of the Government as defined by 29 U.S.C. § 1002(32), which provides, in pertinent part:

> The term "governmental plan" means a plan established or maintained for its employees by the Government of the United States, by the government of any State or political subdivision thereof, or by any agency or instrumentality of any of the foregoing….
>
> 29 U.S.C.A. § 1002(32) (West)

Because governmental plans are excluded from ERISA's framework, Vanessa's policy through MGCCC is excluded from ERISA. *See* 29 U.S.C. § 1003(b)(1)).

10. Despite this, and despite the fact that Vanessa's state employment is clearly evidenced dozens of times throughout Defendants' claim file, Defendants erroneously treated Vanessa's disability policy as an "ERISA" policy. For example, Vanessa's employer is "Mississippi Gulf Coast Community College," a government entity whose employees are exempted from ERISA, and MGCCC communicated continuously with Defendants during the claims process. Likewise, Vanessa's health insurer is "Blue Cross Blue Shield of Mississippi" which is administered by "State and School Employees' Health Insurance Plan" and "self-insured by the State of Mississippi." Finally, Vanessa's Workers' Compensation carrier was the "Municipal Workers' Comp Group," which further denotes that Vanessa is a government employee and thus exempt from ERISA.

11. On or about November 11, 2015, Vanessa became disabled and was no longer able to work for MGCCC in the position that she had previously been employed. Vanessa was primarily

diagnosed with cervical spondylosis with radiculopathy, a degenerative neck condition, at C4-5 and C5-6. After the same date and because of her disability, Vanessa was not able to perform work for any employer at all.

12. Vanessa's "Custodian Duties" are attached hereto as **Exhibit 2** and provide, in part:

> This position requires climbing ladders, working in confined spaces and other physically demanding duties. Also required are physical mobility, manual dexterity, and the ability to lift at least 70 lbs.

13. Accordingly, Defendants classify Vanessa's custodian job as a "heavy occupation."

14. On multiple occasions prior to 2018, Vanessa submitted her claim to LINA and Cigna for short term and long term disability benefits. Vanessa submitted medical evidence which conclusively establishes that she is permanently and totally disabled. For example, Vanessa submitted medical opinions and findings from her treating physician and neurosurgeon, Dr. Viktor Bazzone, who concluded that Vanessa is unable to work because of her multiple medical conditions. *See* **Exhibit 3, Dr. Bazzone Opinion Letters**. Dr. Bazzone also assigned work restrictions based upon multiple evaluations of Vanessa, and these restrictions are so severe that Vanessa would be unable to perform any gainful employment. Nonetheless, Defendants denied Vanessa's claim for disability benefits under the policies and pursuant to the Plan. Defendants further claimed, without basis and in direct contradiction to Dr. Bazzone's numerous representations, that Dr. Bazzone had not placed work restrictions on Vanessa. Defendants have failed to produce any medical evidence which could support a finding that Vanessa is able to return to work.

15. On June 6, 2016, based on a sham opinion by one of Defendants' "hired guns," Dr. Norton Hall, Defendants denied Vanessa's claim.[1] A copy of Defendants' First Denial Letter is attached as **Exhibit 4**.

16. On July 14, 2016, Vanessa's previous attorney, Jonathan Franco, mailed correspondence to Defendants requesting further review of Vanessa's claim. A copy of that correspondence is attached hereto as **Exhibit 5**. Further, while Vanessa's attorney requested a copy of Vanessa's entire claim file on June 22, 2016, he did not receive a copy of Vanessa's file until nearly five (5) weeks later and, even then, the claim file was incomplete.

17. On or around July 25, 2016, Vanessa appealed Defendants' denial of her claim. On or around August 18, 2016, Vanessa's appeal was removed from appeal status so that she could proceed with her Worker's Compensation claim. Vanessa resumed her appeal on December 2, 2016 after her claim for Worker's Compensation benefits were denied.

18. On December 2, 2016, Vanessa submitted hundreds of additional records to Defendants evidencing her disability, including updated medical records and a deposition transcript of Dr. Bazzone from November 1, 2016 wherein Dr. Bazzone stated that Vanessa is "not fit for work" and has not been fit for work since her injury in June 2014.

19. Mere days after receiving the deposition transcript and updated records, on December 6, 2016, Defendants denied Vanessa's appeal because Defendants' "nurse case manager" determined that the new records and deposition transcript of Dr. Bazzone "would not change the previous recommendation made," despite acknowledging the fact that Vanessa's MRIs showed "severe cervical spondylosis, bony spurs, and disc herniation at C4-5 and C5-6," that

---

[1] For example, Dr. Hall determined that Vanessa could return to custodial work at her "heavy occupation," despite her abundantly-documented spinal injury and work restrictions, because Vanessa was capable of "driving, watching TV, and walking ½ block once a week."

Vanessa's spine injury did not respond to epidural steroids, that Dr. Bazzone performed a multi-level anterior cervical discectomy and fusion at both C4-5 and C5-6, that Dr. Bazzone recommended a decompression posteriorly at C4, C5, and C6, and that Vanessa had reached Maximum Medical Improvement ("MMI") and still could not work. A copy of Defendants' Second Denial Letter is attached as **Exhibit 6.**

20. On or around December 12, 2016, pursuant to Defendants' request, Defendants received nine (9) years worth of Vanessa's medical records "covering the time period of February 7, 2007 through May 24, 2016." Once again, only two (2) days after receiving the medical records, Defendants denied Vanessa's appeal because "this information was reviewed and does not change our prior decision." A copy of Defendants' Third Denial Letter is attached as **Exhibit 7**.

21. On February 14, 2017, Defendants denied Vanessa's appeal. A copy of Defendants' Appeal Denial is attached as **Exhibit 8**.

22. In sum, Defendants persisted in their initial denial of Vanessa's claim for disability benefits. Further, Defendants refused to produce requested documents and intentionally withheld information relating to Vanessa's claim., which made it impossible for Vanessa to evaluate what additional documents should be produced to Defendants. Defendants referred Vanessa's claim to two of their "hired guns," Dr. Kimberly Terry and Dr. Norton Hall, physicians who, upon information and belief, Defendants regularly hire to give Defendants the opinions they want; however, Defendants refused to produce documents indicating that they had hired Dr. Terry and Dr. Hall. Defendants intentionally concealed this fact from Vanessa, which is evidenced by the fact that, in all of their denial letters to Vanessa purporting to explain the reasons Defendants refused to pay Vanessa's claim, Defendants do not mention the fact that they asked Dr. Terry or Dr. Hall to review Vanessa's claim in hopes of creating some basis for denying her claim. Because

Defendants concealed these reports and did not reference them in their denial letters, Vanessa was precluded from seeking the explanation that Dr. Terry and Dr. Hall state that they do not have. Based upon information and belief, neither Dr. Terry or Dr. Hall were provided and did not review all of Vanessa's medical records, including Dr. Bazzone's numerous opinions, deposition transcripts, and Vanessa's multiple cervical MRI reports.

23.     Defendants denied Vanessa's claims by acting in concert with physicians who were intentionally and purposefully paid by Defendants to conduct a sham examination of Vanessa with the pre-determined intention to deny Vanessa's claims. Defendants are required to administer a plan which provides a neutral tribunal or decision making body to render decisions regarding disability claims. Defendants have refused to do that and have, instead, hired their own employees to render these decisions. These employees operate under a conflict of interest pursuant to *Metropolitan Life Ins. Co. v. Glenn*, 554 U.S. 105 (2008). Moreover, these employees are encouraged to deny claims even when, as in the case at hand, there is no evidence to support the denial and all of the evidence conclusively supports paying the claim. Defendants have not only denied Vanessa's claim in bad faith, but they have also orchestrated a scheme whereby their employees were guaranteed to deny Vanessa's claim and all other persons similarly situated. Defendants have failed to follow basic accepted claims handling procedures for disability claims, and Defendants conduct is so atrocious that they have been investigated and find by insurance commissions around the country. For these reasons, and other reasons to be shown at trial, Defendants' decisions regarding the claim are not entitled to any deference and Defendants are liable for extracontractual damages for their egregious and reckless behavior, including punitive damages and attorneys fees.

24. Defendants committed bad faith in the denial of Vanessa's claim because there is neither a legal, factual, arguable, or legitimate basis to support Defendants' denial of the claim. The Defendants instituted claims handling procedures described above in bad faith.

25. Defendants failed to properly process Vanessa's claim and all disability claims solely in the interests of participants and beneficiaries. Defendants failed to provide a full and fair review of Vanessa's claim denial.

## COUNT ONE - CLAIM FOR POLICY BEENFITS

26. Plaintiff incorporates all preceding paragraphs as though fully restated herein.

27. Plaintiff has fulfilled all conditions for the receipt of benefits under the Policy and has presented such evidence to the Defendants. Plaintiff has fulfilled all conditions precedent.

28. Defendants have wrongfully denied the Plaintiff's claim for benefits under the Policy. Defendants have made unsupported factual conclusions and misconstrued the terms of the Policy in reaching their tetermination to deny the Plaintiff's claim for benefits.

29. Defendants' denial of the Plaintiff's claim for benefits is a result at least in part of the conflict between the Defendants' fiduciary obligations to the Defendants' Policy holders when determining claims under the Policy and its interest in maximizing its own profitability. The result of this conflict of interest has been demonstrated by the Defendants' refusal to consider evidence presented by the Plaintiff, including the conclusions and analysis of the Plaintiff's treating physicians. Additionally, the conflict of interest has manifested itself in that the Defendants refused to produce requested documents, concealed evidence, and refused to honestly explain the basis of the denial of the Plaintiff's claim and her appeals. The Defendants' denial of the claim is contrary to the evidence presented to the Defendants and contrary to the terms of the Plan and is therefore wrongful.

30. Vanessa is entitled to benefits under the Policy.

31. The Plaintiff has incurred and will continue to incur attorneys' fees and litigation expenses and is entitled to an award for such fees and expenses. For the reasons stated herein, Plaintiff is entitled to an award for these expenses and fees and is also entitled to punitive damages. Defendants should be assessed punitive damages to punish them for their wrongful conduct and to deter others from repeating such wrongful conduct in the future.

## COUNT TWO – BAD FAITH BREACH OF CONTRACT, BAD FAITH FAILURE TO PAY BENEFITS, BAD FAITH DENIAL OF CLAIMS, BAD FAITH CLAIMS HANDLING, BAD FAITH DELAY, AND BAD FAITH INVESTIGATION

32. Plaintiff incorporates all preceding paragraphs as though fully restated herein.

33. Defendants' failure as described above is a bad faith breach of contract and the Defendants' actions and refusal to pay the claims described above rise to the level of an independent tort. There is not legal or factual basis for Defendants' refusal to pay the Plaintiff's short term and long term disability claims. Moreover, Defendants utilized claims handling procedures in bad faith which are guaranteed to deny claims which the Defendants know should be paid. The Plaintiff is entitled to punitive damages and attorneys' fees for the bad faith denial of Defendants. The award of punitive damages and attorneys' fees is appropriate. Moreover, such an award would benefit other participants under the Plan and would discourage Defendants from repeating their egregious conduct again in the future.

34. At all material times, Defendants acted wrongfully and in bad faith withheld benefits due to Plaintiff under the Plan and failed to provide Plaintiff benefits for her claim. Defendants have unreasonably delayed and refused to provide benefits under the Policy. Defendants purposefully delayed its investigation and unreasonably denied Plaintiff's claim.

35. Defendants refused to pay benefits on Plaintiff's claim due under the Policy, and forced Plaintiff to hire legal counsel to protect her rights under the Policy. By refusing to explain Plaintiff's rights under each claim, timely investigate each claim, and pay each claim, Defendants have acted fraudulently, maliciously, oppressively and outrageously towards Plaintiff with conscious disregard for her rights. These actions taken by Defendants were purposeful and deliberately undertaken with malice and vindictiveness on the part of Defendants. Plaintiff has suffered embarrassment, humiliation, and mental and emotional distress because of these actions by Defendants.

36. Defendants' refusal to pay benefits has compelled Plaintiff to engage legal counsel and to initiate litigation to recover coverage and benefits under the Policy

37. Defendants have deprived Plaintiff of the benefits justly due under the policy, when Defendants knew that those benefits were needed by Plaintiff.

38. By unreasonably delaying and refusing to provide benefits of coverage in payment of Plaintiff's valid claims, Defendants acted fraudulently, oppressively, maliciously, and outrageously toward Plaintiff, with conscious disregard for her rights under the law and under the Policy, and with the intent and design of benefitting Defendants financially, of harassing Plaintiff, of discouraging Plaintiff from asserting valid claims, of avoiding payment of amounts due for the valid claims, and of causing or willfully disregarding the probability of causing severe emotional distress to Plaintiff.

39. The course of conduct of Defendants, as described above, was deliberately undertaken; was wanton, willful, and in reckless disregard of the rights and well-being of Plaintiff, and was attended by malice and vindictiveness on the part of Defendants in that Defendants:

    a. Willfully failed to tender any payment of benefits owed to Plaintiff;

b. Willfully failed to investigate with reasonable promptness all relevant information and make a realistic evaluation of the claim;

c. Willfully failed to investigate, adjust, and pay Plaintiff's claim in a reasonably prompt manner;

d. Willfully failed to Plaintiff the plain truth regarding investigation, evaluation, and payment or nonpayment of the claim;

e. Willfully failed to evaluate each and every issue during the adjusting of Plaintiff's claim, to give at least equal consideration to the interest of Plaintiff which Defendants gave itself;

f. Willfully utilized investigation, evaluation, and/or adjusting processes for improper purposes in order to deny and/or delay payment of the claim; and

g. Willfully disregarded pertinent and relevant information while investigating, evaluating, and/or adjusting the claim in order to deny the claim.

40. By reason thereof, Plaintiff requests that this Court award punitive damages.

41. As a direct result of the fraudulent, oppressive, malicious, and outrageous conduct of Defendants and of their bad faith in handling the claims of Plaintiff for benefits under the Policy, Plaintiff has sustained substantial economic loss, including but not limited to attorneys fees and seeking to recover benefits under the Plan. As a further result of Defendants' outrageous and willful conduct and bad faith, Plaintiff has suffered embarrassment and humiliation and mental and emotional distress and discomfort all to damages in an amount in excess of $250,000.00.

42. Defendants owed a fiduciary duty to the Plaintiff, and Defendants breached the fiduciary duty and committed bad faith in the following respects:

    a. Defendants failed to disclose their conflict of interest before the claim arose and during the claims handling process;

    b. Defendants failed to disclose all matters material to the insurance policies and claims handling procedures;

    c. Defendants enacted procedures that placed Defendants' interests above those of the Plaintiff;

    d. Defendants failed to disclose these procedures;

    e. Upon information and belief, Defendants encouraged employees handling claims to deny claims;

    f. Upon information and belief, Defendants kept track of how many claims were denied by employees and rewarded employees who denied the greatest number of claims; and

    g. Defendants failed to act with loyalty and utmost good faith and fair dealing.

43. Plaintiff is entitled to punitive damages and attorneys' fees for the bad faith breach of fiduciary duty.

## COUNT THREE – NEGLIGENCE AND GROSS NEGLIGENCE

44. Plaintiff incorporates all preceding paragraphs as though fully restated herein.

45. The actions and inactions of the Defendants, as described above, constitute negligence, entitling Plaintiff to all consequential and special damages allowable under law, and further constitute such gross and reckless negligence so as to constitute malice or reckless disregard for Plaintiff's rights, thereby entitling Plaintiff to heightened damages, including attorneys fees, interest and punitive damages.

46. Specifically, Defendants was grossly negligent in the assessment of Vanessa's claim and the subsequent failure to pay Policy benefits they knew were were owed to Plaintiff pursuant to her contract of insurance with Defendants.

47. Defendants intentionally, or with wanton disregard for Plaintiff, did not pay the disability benefits they knew Plaintiff was owed under the Policy, even though said payments were clearly defined under the contract of insurance between Plaintiff and Defendants.

## COUNT FOUR – BREACH OF CONTRACT

48. Plaintiff incorporates all preceding paragraphs as though fully restated herein.

49. The actions and inactions of Defendants, as described above, constitute a breach of contract.

50. Defendants breached the disability insurance policy(ies) in effect as described above. Defendants failed to pay the Plaintiff's short term disability benefits she is owed. Defendants filed to pay the Plaintiff's long term disability benefits she is owed.

51. Pursuant to Fed. R. Civ. P. 9, Plaintiff would show that she has fulfilled all conditions precedent.

52. Plaintiff is entitled to all damages allowable for breach of contract, including, but not limited to, nominal damages, incidental damages, consequential damages, special damages, attorneys fees, interest and punitive damages.

## COUNT FIVE – TORTIOUS BREACH OF CONTRACT

53. Plaintiff incorporates all preceding paragraphs as though fully restated herein.

54. The course of conduct of Defendants, and the actions and inactions of Defendants, constitute breaches of contract to such an extent as to rise to the level of an independent tort

constituting tortious breach of contract, entitling Plaintiff to consequential damages, special damages, attorneys fees, interest and punitive damages, and all other damages allowable by law.

### COUNT SIX – BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING

55. Plaintiff incorporates all preceding paragraphs as though fully restated herein.

56. The actions and inactions of Defendants, as described above, constitute a breach of the covenant of good faith and fair dealing implied in all contractual arrangements between contracting parties in the State of Mississippi, entitling Plaintiff to all damages allowable pursuant to law, including consequential damages, special damages, attorneys fees, interest and punitive damages.

57. Specifically, Defendants owed Plaintiff the duty to act in good faith and to deal fairly with her. Included within that duty was a duty to promptly and fairly investigate all relevant information and make a realistic evaluation of the claim, yet the agents and employees assigned to adjust and evaluate the loss were not familiar with or were intentionally disregarding the clear evidence supporting the amounts owed to Plaintiff. As a result, Defendants breached the covenant of good faith and fair dealing.

### COUNT SEVEN - ESTOPPEL

58. Plaintiff incorporates all preceding paragraphs as though fully restated herein.

59. As noted above, because Cigna is LINA's agent, LINA is estopped from disclaiming the acts and/or representations and/or misrepresentations made by Cigna and its employees.

### COUNT EIGHT - WAIVER

60. Plaintiff incorporates all preceding paragraphs as though fully restated herein.

61. Ever since receiving the Plaintiff's application, Defendants had the right to investigate Plaintiff's medical condition and to request medical records.

62. By failing to investigate and failing to request Plaintiff's medical records prior to the submission of a claim, all the while collecting premiums from Plaintiff, Defendant has waived any defense it may have to Plaintiff's claims under the applicable policy.

63. Thus, Defendants waived any defenses to liability under the disability insurance policy.

### COUNT NINE – NEGLIGENT AND INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

64. Plaintiff incorporates all preceding paragraphs as though fully restated herein.

65. The actions and inactions of Defendants, as described above, constitute negligent and intentional infliction of emotional distress, entitling Plaintiff to all damages allowable pursuant to law.

### DAMAGES

66. Plaintiff incorporates all preceding paragraphs as though fully restated herein.

67. Plaintiff is entitled to damages for her short term and long term disability benefits. Plaintiff's medical condition is not expected to improve, and her physicians have offered an opinion that she is disabled. Defendants should be required to pay all benefits to which the Plaintiff is due or which will become due under the terms of the policy. Plaintiff is entitled to interest on past due payments. Plaintiff is entitled to damages for emotional distress and is also entitled to additional compensatory damages.

68. Plaintiff is entitled to punitive damages, attorneys fees, *Veasley* damages, and her litigation expenses.

WHEREFORE, PREMISED CONSIDERED, Plaintiff, Leather Vanessa Perryman, prays that the Court will grant her a judgment against the Defendants for the damages prayed for above, both compensatory and punitive, in an amount which a jury of the Plaintiff's peers finds she is entitled to receive, including but not limited to compensatory damages, special damages, emotional distress damages, incidental and consequential damages, plus attorneys fees and costs, *Veasley* damages, punitive damages, and pre-judgment and post-judgment interest. Plaintiff prays for such other relief, both general and specific, to which she is entitled in the premises.

Respectfully submitted this 17th day of May, 2018.

**LEATHER VANESSA PERRYMAN,
Plaintiff**

  */H. Virginia Kramer*
H. VIRGINIA KRAMER, MSB #105477

P. MANION ANDERSON, MSB # 104250
H. VIRGINIA KRAMER, MSB # 105477
McHARD, McHARD, ANDERSON & ASSOCIATES, PLLC
ATTORNEYS AT LAW
15 MILBRANCH ROAD
HATTIESBURG, MS 39402
T: 601-450-1715
F:   601-450-1719
manderson@mchardlaw.com
vkramer@mchardlaw.com